Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the juvenile in this case. As this Court is aware, this case is back up to the Ninth Circuit after a remand about a year ago. There are six factors that the courts look to in determining whether or not a juvenile should be transferred, and I think that there are four of those factors that bear emphasis in those case – in this case. And that's primarily this juvenile's response to treatment and past treatment efforts, which, when combined with his social history and his intellectual development, bode well, I think, for his prospects at rehabilitation. As the Court is aware, Mr. Melbourne – I'm sorry – the juvenile grew up in what could probably best be described as a chaotic, violent, alcohol-influenced environment. He – as a result of the environment that he grew up in and as a result of the things that he saw and experienced as a young man, he developed, as one might expect, a number of trauma-related problems. The interesting thing about the juvenile is that he really received no treatment until he got into the criminal justice system. He received probably best to be described a few counseling sessions after he saw his cousin murdered, and he went to a 30-day CD treatment program that not unexpectedly didn't seem to resolve his problems. But when Mr. Melbourne did get into the juvenile system and he was given an opportunity to engage in rehabilitative programs, he seemed to do pretty well. When he was at the Rio facility, he successfully completed the chemical dependency program. He was discharged with a fair prognosis if he continued to receive appropriate treatment. He was also engaged in a number of other rehabilitative programs, including the anger management, cognitive thinking. And by the reports, at least from the Rio facility, he seemed to do pretty well in those programs as well. His past criminal record and his record after the murder seem to show continued problems of a very serious nature. There, I mean, certainly, and I can't, he obviously did have the one problem and was convicted of assault. I guess, you know, one thing I would say to that is that when you take a youngster like this with this much trauma and very little treatment, it's somewhat unrealistic to expect him to be rehabilitated in such a And it's not a factor bearing in our favor, obviously. But I would ask the Court to put that into perspective. But the perspective, should it not be, to assess whether the district judge abused his discretion, and that is with respect to any of the six factors, made a clearly erroneous finding. I mean, we don't sit here reviewing the district judge's analysis de novo. It is an abuse of discretion standard, yes. But what I would say is that the Court did abuse its discretion in this case, and I say that respectfully, but nevertheless, the Court did not give enough credence and enough emphasis to this juvenile's history and the efforts that he had made, and apparently had made strong efforts at rehabilitation. Was the district judge clearly erroneous in that regard? I mean, we kind of get into this thing of whether it's findings of fact or abuse of discretion. And, Your Honor, I guess the assessment, I would argue, is under the abuse of discretion standard, not the clearly erroneous standard. But the district judge did analyze the correct facts with regard to rehabilitation, do you not? I can't really. I wouldn't argue that the district court made erroneous findings of facts. What I would say is, based upon those facts, that the district court abused its discretion in weighing the facts and coming to its ultimate conclusion. The case law is pretty clear, and that is that if there – that a juvenile should not be transferred if it appears as though there are rehabilitative programs that are available that can address his problems. The government has forthrightly conceded that there are rehabilitative programs available. There's the Rio program. There's the Five Rivers program where Mr. – where the juvenile was that's in Idaho. And there's the Dakota Horizons program where he is now. And what I would urge the court to do is to reverse, and with directions that the he can have a chance at rehabilitation, a chance that he hasn't yet been given in light of that fact. How old is he at the present time? He's 20, Your Honor. Twenty. But an opportunity that he hasn't had, and so I think it's unfair to assess his chances as bleak at this point when he really hasn't had that opportunity. Thank you. Thank you. Good morning, Your Honors. I'm Carl Rostead. I'm with the U.S. Attorney's Office out of Great Falls here on behalf of the United States. There's only – I think most of the points are fairly well made in the brief, which was originally authored by the trial counsel who handled this case below, Craig Holler, who's since left our office. I think what Mr. Ness has candidly told the court is that his disagreement is not necessarily with the findings that the court made or the fact that those facts are in any way erroneous. It's just that he prefers to have had weight, more weight put on rehabilitation rather than what Judge Haddon obviously relied upon, which was the danger to the community of treating this young man as a juvenile. And in that regard, I think it's important to emphasize several factors. First of all, is that criminal record? This crime occurred in July of 2002. By February of 2003, ADM was convicted of burglary in the federal system, treated as a juvenile, and given a 12-month sentence for which he was released obviously early because by September he committed an assault in the state system for which  that was in September of 2003. And then he was prosecuted as an adult and served time in the state system. And so by the time we picked him up, he's already had the chance of rehabilitation in the federal system. He's already had a chance of rehabilitation in the state system. And he responds to that by trying to stab other people in the institution with a shiv, either metal or plastic, both. And so this is a young man who obviously did not take advantage of the rehabilitative opportunities that were available to him. There's only so much that could be done. How good are those programs? How successful are they, Judge? Well, Your Honor, I have to tell you this. If you look at our calendar here, it's almost like it's a Judge Haddon calendar. Yes, Your Honor. I understand. And we have a lot of these that come out. And it's kind of dreadful to read case after case after case of these young people on the reservations with all the poverty and all the drinking and all the other bad things that go on. I understand, Your Honor. Things are going to be getting worse as the years go by. Your Honor, I think that is, in some ways, it's an accurate reflection of what you What are we doing about it other than locking them up for a long time? I think there are a lot of kids that we put into the system. We prosecute a lot of Indian juveniles in Montana and throughout the West that has Indian country. And we've every once in a while come across people like ADM who don't respond, but you'll never see all the ones that do. And when you say how good are the programs, at least in the context of this particular I'm just asking you. And frankly, Your Honor, having not gotten into that part of it, I can't testify to it. But I think the really important point here is ADM was put into the Federal system as a juvenile for that burglary conviction back in 2003. So regardless of whether the program is good or bad, if you are listening to Mr. Ness, you're saying, well, we have to leave him in the juvenile system so he has an opportunity at rehabilitation. But we've already put him through that program, so there's no reason to believe that the program's improved since 2003 when he had his first shot at it. I think that there's every effort was there to give him a treatment opportunity, and ADM just didn't take advantage of it. And now he's almost 21, and to send him back into the juvenile system, in our view, is difficult to comprehend as to what we can do for him at the age of 21, that we could not do it when he was almost 16. But is that his fault or the court system's fault? That's nature's fault, I guess, Your Honor, because he's just keeps he has been consistently in the system, whether State or Federal system, since he was 16 years old, except for the times when he's out committing crime. I don't know. I mean, you could say it's the court system's fault, but if he had not committed the assault in the autumn of 2003, he may have been treated as a juvenile. He was a month shy of 16 when he committed the murder. Yes, Your Honor. And here we are four years later. I understand, Your Honor. And three of those years have been, as we've argued about the transfer once and come up on an issue that was remanded, and so the court system has taken it. But if you're trying to decide what's best for the juvenile and what's best for the passage of time, we also have to look at did Judge Haddon abuse his discretion in realizing that this young man is no longer a 16-year-old boy. He is now aged to the age of 20, 21, almost 21 years old. You know, I see one major fault in the fact-finding, and that was that Judge Haddon didn't accurately reflect what happened to this kid when he was growing up. If you read what he wrote, it's not an accurate reflection of the hideous upbringing that this boy had. I don't know what we do with that right now, but I think that that's a serious flaw in Judge Haddon's opinion. I think, Your Honor, what Judge Haddon did was he took a line out of one of the reports that said that ADM had had a fairly stable relationship with his grandparents and didn't look at all about the violence of an uncle and a stepfather. I mean, there's obviously other people that were causing problems in that. And he looked at the dynamic that was between the juvenile and his grandparents to the exclusion of others. And, again, we get back to the weighting. I mean, he's the weighting or clear error on this one? I don't think it's clear error, Your Honor, on that, because there's some report in there that ADM at least expressed that he had a fairly good relationship with his grandparents. But that's such a... And that's who he lived with. That's a very narrow... It is. You agree that the record is inappropriate in that regard. Yes, Your Honor. And I can certainly see that. I don't concede it, but I see that. If the district judge engages in clear error on one of the six factors, does that automatically compel reversal? No, Your Honor. Because I think that the six factors are not disjunctive and all have to be present. Again, we get back to this abuse of discretion standard. As a trial judge, you obviously will always look at a multitude of factors. And sometimes you're going to weigh rehabilitation higher because you look at someone and say, this person can make it. That doesn't make the fact that you didn't look at a criminal record somehow flawed. But isn't there a distinction between weighing out the facts under each factor and coming to a judgment, and on one factor, failing to lay out some clear facts that ought to be taken into account, namely considering his social history? It comes down to a question of whether this Court thinks that that would materially affect the judge's decision and his discretion. I see that your argument that he could have made a record saying he had a poor childhood, but in weighing all the other factors, it's come to the same conclusion. Right. We go back down, and Judge Fahad would make the findings saying, I assume that I recognize that there were other factors in his life besides his relationship with his grandparents that I should have taken note of, and I now take note of them, and I make the same So I think in discretion, it is not, it is not, Your Honor, one that the failure to find on a particular fact error should reverse the judge's decision here, because otherwise, we go back down all the time because judges very rarely make errors, but every once in a while they do, and we could always be sending it back down for True, Your Honor, and not reluctant to do so, I'm sure. If the Court has no further questions, I've used up most of my time. Thank you. Thank you. Mr. Ness. I think when you're looking at the weighing of these factors and the standard to use, the abuse of discretion standard, it also has to be kept in mind that the best interest of justice in this case. And particularly when you're looking at erroneous fact-finding, it's hard for me to see how the weighing can be done within the scope of an abuse of discretion standard. If you get the facts wrong, I don't understand how the weighing can necessarily be said to have been correctly done, or even within the broad range for abuse of discretion. It's similar, I guess, to an error in a guideline calculation, and coming up with a sentence, this Court would send that back, even if it was a relatively small error, because it would have necessarily affected the Court's analysis of the sentencing factors. And so what I would urge the Court to do is not only because of the fact that there are factual errors made with respect to this juvenile social history, but also the lack of attention paid to his rehabilitative efforts and lack of rehabilitative opportunities as a youth that the Court send this back. So your position would be that if there is clear errors to any of the six factors, it must be sent back? I think so, because I don't see how you can do an adequate weighing analysis when you get the facts wrong, even with one factor. Thank you. Thank you. The matter is submitted.
judges: B. Fletcher, Pregerson, Selna